UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

KEITH VAN TRAN,                    ) Case No. EDCV 15-0671 AS
                                   )
                Plaintiff,         ) **MEMORANDUM OPINION AND**
          v.                       )
                                   ) **ORDER OF REMAND**
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social      )
Security Administration,           )
                                   )
                Defendant.         )
_____)

     Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.


**PROCEEDINGS**


     On April 8, 2015, Plaintiff filed a Complaint seeking review of the denial of his Application for Social Security Disability Insurance Benefits. (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge.

(Dkt. Nos. 9, 10).   On August 17, 2015, Defendant filed an Answer and the Administrative Record ("AR").   (Dkt. Nos. 13, 14).   The parties filed a Joint Position Statement ("Joint Stip.") on November 30, 2015, setting forth their respective positions regarding Plaintiff's claims.   (Dkt. No. 17).

The Court has taken this matter under submission without oral argument.   C.D. Cal. L.R. 7-15; (Dkt. No. 7 (Order Re: Procedures In Social Security Case)).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On January 19, 2012, Plaintiff, formerly employed as a casino dealer from 2001 to 2011 and a cell phone and laptop technologist from 1997 to 2001, (AR 176-78), filed an Application for Disability Insurance Benefits, alleging that he became unable to work because of his disabling condition on June 1, 2011, (AR 144-49).   On October 11, 2013, Administrative Law Judge ("ALJ"), Marti Kirby, heard testimony from Plaintiff and vocational expert Corinne Porter.   (AR 32-52).   On November 8, 2013, the ALJ issued a decision denying Plaintiff's application.   (AR 18-31).

After determining that Plaintiff had the severe impairments of rheumatoid arthritis, ankylosing spondylitis and cervical myofascial pain, (see AR 20),[1] the ALJ found that Plaintiff had the residual

---

[1]   The ALJ found that Plaintiff's right foot injury was not a severe impairment.

2

functional capacity ("RFC")[2] to perform "a range of" "light work"[3] with the following limitations:

> [T]he claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for two hours out of an eight-hour workday, but no more than 15 minutes at a time, with regular breaks; he can sit for six hours out of an eight-hour workday, but with brief position changes after approximately 30 to 45 minutes, with regular breaks; he is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; he can perform postural activities on an occasional basis except he cannot climb ladders, ropes, or scaffolds; he cannot work at unprotected heights, around moving machinery, or around other hazards; he cannot perform work requiring hypervigilance or intense concentration on a particular task, meaning he cannot be off task for even the briefest amount of time like watching a surveillance monitor or safety might be an issue; he must avoid concentrated exposure to extreme temperatures and humidity; and he is precluded from fast-paced production or assembly line-type work.

---

[2]   A claimant's RFC is what he or she still can do despite existing exertional and nonexertional limitations.   20 C.F.R. §§ 404.1545(a)(1).

[3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."   20 C.F.R. §§ 404.1567(b).

3

(AR 21).   In addition, the ALJ determined that Plaintiff had concentration limitations, but not a severe mental impairment, caused by side effects of medication that would affect Plaintiff's ability to maintain concentration and hypervigilance during the course of a workday.  (Id.).

The ALJ found that Plaintiff was not able to perform his past relevant work as a casino dealer and technologist, (AR 25), but that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (AR 25-26).   The ALJ determined that Plaintiff would be capable of performing the requirements of representative occupations identified by the vocational expert, such as the occupations of ticket seller (Dictionary of Occupational Titles ("DOT") 211.467-030), information clerk (DOT 237.367-018), and addresser (DOT 209.587.010).   (AR 26).   The ALJ therefore concluded that Plaintiff was not under a disability within the meaning of the Social Security Act.  (Id.).

On December 23, 2013, Plaintiff filed a timely request for the Appeals Council to review the ALJ's decision.  (AR 12-14).   On February 13, 2015, the Appeals Council denied Plaintiff's request for review, (AR 1-4), and the ALJ's decision became the final decision of the Commissioner.  (AR 1).   The Court reviews the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g).

4

**STANDARD OF REVIEW**

The Court reviews a final decision of the Commissioner of the Social Security Administration to determine if the decision is free of legal error and supported by substantial evidence. <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). "If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred by (1) improperly considering the relevant medical evidence in the record, including Plaintiff's treating physician's specific residual functional capacity limitations, (Joint Stip. 10); and (2) rejecting Plaintiff's testimony regarding the severity of his symptoms by (a) failing to specify which statements by Plaintiff were not sufficiently credible, (b) erroneously relying on the conservative

5

course of treatment prescribed by Plaintiff's physicians, and (c) improperly relying on a lack of objective medical evidence, (Joint Stip. 20).

**DISCUSSION**

After reviewing the record, the Court finds that Plaintiff's second claim warrants remand for further consideration. Because remand is appropriate on the issue of whether the ALJ improperly rejected Plaintiff's testimony as not credible, the Court declines to consider Plaintiff's contention that the ALJ improperly considered the relevant medical evidence.

**A.** **The ALJ Erred In Finding Plaintiff's Statements Describing His Symptoms Not Credible**

In deciding whether to accept a claimant's subjective symptom statements, an ALJ must perform two stages of analysis. First, the ALJ must conduct a threshold inquiry whether the claimant has produced objective medical evidence establishing a medically-determinable impairment reasonably likely to be the cause of the claimant's subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991). Second, if the ALJ finds that the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject

6

the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so.  Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); Smolen, 80 F.3d at 1283-84 (citation omitted).

After describing this two-part inquiry (AR 21-22), the ALJ summarized Plaintiff's testimony regarding the severity of his symptoms as follows:  (1) Plaintiff could not work because of generalized joint pain throughout his body that was most severe in his back, that measured an 8 or 9 on a 10-point pain scale with medication treatment, and that made every movement painful, (AR 22); (2) treating physicians prescribed Plaintiff medication--i.e., narcotics to alleviate his pain and Humira injections to treat his arthritis--but these medications did not alleviate his symptoms, (AR 22); and (3) "[Plaintiff] could not stand or sit for long periods of time[,] could . . . not lift more than five pounds[,] sometimes needed help dressing, . . . did not sleep" for more than four or five hours a day, and could only sleep in hour blocks of time, (AR 22).  The ALJ also summarized the additional statements Plaintiff made in his function report regarding the severity of his symptoms: (1) Plaintiff needed constantly to change positions because of pain; (2) Plaintiff had difficulty with personal care, reaching, and postural activities (e.g., squatting, bending, and kneeling); and (3) Plaintiff had numbness in his hands.  (AR 22).

The ALJ found that Plaintiff's reported subjective symptoms satisfied the first threshold inquiry because Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR 22). However, the ALJ rejected Plaintiff's subjective statements regarding the severity of his symptoms, finding that the "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms [were] not credible to the extent those statements [were] inconsistent with the residual functional capacity assessment." (Id.).

The ALJ articulated two reasons to support her finding that Plaintiff's statements were not credible: lack of objective medical evidence and conservative treatments prescribed.[4]   With respect to

---

[4]   Defendant contends that the ALJ's adverse credibility finding was also based on a third reason: i.e., "several medical opinions that contradicted Plaintiff's claims of total disability." (Joint Stip. 22).   While the ALJ did, in fact, summarize the medical opinions of the consultative examiner and the state agency physicians, the ALJ did not base her adverse credibility finding on these opinions. The Court cannot affirm an ALJ's credibility determination based on a reason that the ALJ did not rely on in making that determination.   Cf. Burrell v. Colvin, 775 F.3d 1133, 1138-39 (9th Cir. 2014) (explaining that although "[t]he government argues that Claimant's testimony that she has, on average, one or two headaches a week conflicts with the medical record[,] the ALJ never connected the medical record to Claimant's testimony about her headaches" and "never stated that he rested his adverse credibility determination on those findings," and therefore holding that the court cannot conclude that the "history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding"); see also Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001) (the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

the lack of objective evidence, the ALJ explained that "[a]lthough the claimant alleged pain and functional limitations associated with Rheumatoid arthritis symptoms, . . . there was little evidence of consistent episodes of swelling or reduced range of motion . . . that would be common with rheumatoid arthritis symptoms." (AR 22). The ALJ further indicated that "[d]iagnostic studies also did not support the alleged severity of the claimant's symptoms and resulting functional limitations." (Id.). Thus, the ALJ found that, "[a]s the severity of claimant's assertions were not supported by the medical evidence, his allegations were not entirely credible." (Id.).

With respect to the finding that Plaintiff had only received conservative treatment, the ALJ noted that all of the treatment records revealed that "the claimant received routine, conservative, and non-emergency treatment," (AR 23), including (1) a January 18, 2011, spine and left joint x-ray; (2) medication and a recommendation to remain off of work for four weeks to treat complaints of back, neck and foot pain and clinical findings of tenderness in those areas at a June 2, 2011, examination; (3) medication to treat continued pain complained of and clinical findings of lower back tenderness at a July 25, 2011, examination; (4) two physical therapy treatments to address complaints of joint back pain; (5) a January 10, 2012, x-ray examination; and (6) a medication refill to address complaints of back pain and clinical findings of neck and back tenderness at a July 24, 2012,

9

examination. (Id.).[5]   The ALJ further noted that Plaintiff had not been treated with any surgical interventions and explained that the "lack of more aggressive treatment or surgical intervention suggests the claimant's symptoms and limitations were not as severe as he alleged." (AR 22).

### 1.   The ALJ Articulated the Specific Statements That She Found Not Credible

Plaintiff first contends that the ALJ's reasons do not satisfy the clear and convincing standard because the ALJ "clearly failed to specify which statements by Plaintiff concerning pain, functional limitations, and other symptoms were not 'sufficiently credible.'" (Joint Stip. at 20, citing Smolen, 80 F.3d at 1284 (an ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion")).

An ALJ is not "'required to believe every allegation of disabling pain' or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).   To discredit a claimant's testimony when a medical impairment has been established, however, the ALJ must

---

[5]      Although the ALJ noted that the "period at issue begins on the alleged onset date of June 1, 2011," the ALJ, "in order to view the record in the light most favorable to the claimant, . . . read and considered all the medical evidence in the record." (AR 23).

provide "'specific, cogent reasons for the disbelief.'" <u>Id.</u> (quoting <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595l 599 (9th Cir. 1999)).

    After acknowledging that she was required to "make a finding on the credibility of [Plaintiff's] statements based on a consideration of the entire case record," the ALJ specifically identified Plaintiff's statements regarding his pain and functional limitations and concluded that, "[a]lthough the claimant alleged pain and functional limitations associated with rheumatoid arthritis symptoms, his allegations were not supported by the medical evidence." (AR 22). The ALJ specifically explained, for example, that "there was little evidence of consistent episodes of swelling or reduced range of motion . . . that would be common with rheumatoid arthritis symptoms," and that "[d]iagnostic studies also did not support the alleged severity of the claimant's symptoms and resulting functional limitations." (AR 22). The ALJ further concluded that the subjective symptoms identified by Plaintiff were not credible because the record established that Plaintiff received conservative, routine and non-surgical treatment that was inconsistent with the severe symptoms Plaintiff reported, and specifically identified the treatment evidence upon which she relied. (AR 22-23). Thus, the ALJ satisfied her obligation to state specifically which symptom testimony and statements she found not credible and the facts in the record that support that finding. <u>Cf.</u> <u>Smolen</u>, 80 F.3d at 1283-84.

11

**2.    The ALJ's Reliance On Conservative Treatment Was Not A Clear And Convincing Reason To Find Plaintiff's Statements Not Credible**

Plaintiff claims that the ALJ erroneously relied on the conservative course of treatment prescribed by Plaintiff's physicians to support her finding that Plaintiff's statements describing the severity of his symptoms were not credible. (Joint Stip. at 19). "Where, as here, the ALJ did not find 'affirmative evidence' that the claimant was a malingerer," the ALJ was required to provide a clear and convincing reason for rejecting Plaintiff's statements. Orn, 495 F.3d at 635 (quoting Morgan, 169 F.3d at 599). The ALJ does not cite to any evidence in the record of malingering and therefore the "clear and convincing" standard applies.

Although the ALJ opined that the "lack of more aggressive treatment or surgical intervention suggests the claimant's symptoms and limitations were not as severe as he alleged," (AR 22), Plaintiff contends that his treating physician determined that he "is not [a] surgical candidate," (AR 408 (noting under section for "Complications" that Plaintiff's condition was "worsening" and that Plaintiff "is not a surgical candidate")), and hypothesizes that "[m]ost likely, this is because his entire spine is severely effected [sic] by the ankylosing spondylitis," (Joint Stip. at 18). Plaintiff also argues that the ALJ "has failed to suggest any surgical procedure that might in any way relieve any of Plaintiff's symptoms, and [that] no medical professional . . . has made any

12

[such] suggestion[.]" (Id.). Plaintiff further asserts that the ALJ "has failed to identify any 'more aggressive treatment' which might somehow improve Plaintiff's conditions or which might be a better form of treatment" than the numerous medications, including narcotic pain medication and Humira, that Plaintiff's treating physicians already have prescribed. (Joint Stip. at 18-19). According to Plaintiff, the mere suggestion that the existence of some hypothetical "other form of 'aggressive' treatment" renders Plaintiff not credible "simply makes no sense and is inconsistent with the facts in this case." (Joint Stip. at 19).

Defendant asserts that "[w]hile Plaintiff speculates as to why Dr. Lee stated he was not a surgical candidate, that does not change the validity of the ALJ's finding that the lack of more aggressive treatment or surgical intervention diminished the credibility of Plaintiff's subjective complaints." (Joint Stip. at 24). Defendant further contends that "it was reasonable for the ALJ to infer that the lack of surgical intervention indicated Plaintiff's symptoms were not disabling." (Id.).[6]

---

[6]      Defendant also argues that the ALJ's adverse credibility finding is also supported by other evidence of conservative treatment:   (1) treatment notes indicating that Plaintiff's condition generally remained unchanged and treatment providers frequently continued him on the same medication; (2) Plaintiff's physician recommending routine follow-up as needed; and (3) gaps in Plaintiff's treatment.  While the ALJ summarized the treatment notes and indicated that there was no evidence that the claimant had received treatment between April 30, 2012, and July 24, 2012, (AR 23), the ALJ did not specifically base her adverse credibility finding on these factors.  The Court will not affirm the ALJ's

Evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment," Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted), provided that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's treatment was conservative. "There is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment." Childress v. Colvin, No. 13-CV-3252-JSC, 2014 WL 4629593, *12 (N.D. Cal. Sept. 16, 2014). It is clear that courts view the use of non-prescription medication as conservative treatment. See, e.g., id. (holding that the ALJ did not err by finding the claimant's testimony regarding severity of symptoms not credible where the claimant was treated with over-the-counter pain medication); Ritchie v. Astrue, No. EDCV 12-311 JC, 2012 WL 3020012, *5 (C.D. Cal. July 24, 2012) ("[A]lthough plaintiff testified that she was unable to work due to pain in her back and hips, she also stated that she did not 'like' narcotics, and took only over-the-counter pain medication (i.e. Tylenol, aspirin or Advil)," which cast doubt on the plaintiff's credibility.); Boyce v. Astrue, No. 6:11-CV-06278-SI, 2012 WL 4210628, *7 (D. Or. Sept. 19, 2012) (holding that "conservative treatment" consisted of "crutches, ice, and non-narcotic pain medication"). Moreover, "[s]everal courts in this circuit have found the use of medication to control spinal pain, and the absence

decision to discredit Plaintiff's testimony based upon reasons that ALJ did not specifically articulate. Cf. Burrell v. Colvin, 775 F.3d 1133, 1138-39 (9th Cir. 2014); Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001).

14

of surgery or injections, to be 'conservative' treatment." Childress, 2014 WL 4629593, at *12 (citations omitted).

Here, the record contains no evidence that more aggressive treatments or surgical interventions were available options for Plaintiff's conditions. Cf. id. at *13 (declining to hold that the use of medication to control spinal pain and the absence of surgery or injections is conservative treatment because "there is no evidence in the record that surgery or injections were an available or viable option for Plaintiff's condition"). Plaintiff's physicians noted only that surgery was not "indicated," (AR 333, 358, 361), and that Plaintiff was "not [a] surgical candidate," (AR 408 (noting under section for "Complications" that Plaintiff's condition was "worsening" and that Plaintiff "is not [a] surgical candidate")). However, the record does not contain any evidence establishing why surgery was not indicated and therefore cannot support an inference that Plaintiff did not require surgery or other invasive procedures to treat his symptoms. Compare Shimer v. Colvin, No. 13-CV-2200 AC, 2014 WL 7336674, *10 (E.D. Cal. Dec. 24, 2014) (holding that the ALJ did not err in relying on the plaintiff's conservative treatment as a basis for finding the plaintiff not credible, explaining that the "record shows that plaintiff did not require surgery or other invasive procedures for his pain management" and "nor did any physician suggest such procedures in their examination notes," and noting that plaintiff only was treated with "a recommendation to utilize hydrotherapy and

dynamic soft tissue mobilization ('DSTM') with a limited number of prescriptions for pain medication").

The Court rejects Defendant's contention that "it was reasonable for the ALJ to infer that the lack of surgical intervention indicated Plaintiff's symptoms were not disabling." (Joint Stip. at 24). An ALJ is not qualified to draw her own inference regarding whether more aggressive courses of treatment are available for a claimant's conditions. See, e.g., Boitnott v. Colvin, No. 12-CV-2977-BTM(DHB), 2016 WL 362348, *4 (S.D. Cal. Jan. 29, 2016) (an ALJ is not qualified to draw his own inference regarding whether more aggressive courses of treatments were available) (citing Matamoros v. Colvin, No. 13-CV-3964-CW, 2014 WL 1682062, *4 (C.D. Cal. Apr. 28, 2014)); see also Social Security Ruling ("SSR") 96-7P (July 2, 1996) (providing that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints" but cautioning that the "adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").[7]

---

[7]     An ALJ's reasons for rejecting a claimant's subjective evidence of his symptoms must comport with SSR 96-7p, which, among other things, explains the factors to consider in assessing the credibility of a claimant's statements about pain and other

16

Here, the ALJ simply assumed that surgery was not indicated because Plaintiff's condition and symptoms were not sufficiently severe to warrant surgical intervention.   There is no evidence, however, that any physician determined that the severity of Plaintiff's condition did not warrant surgical intervention.   To the contrary, the only evidence before the Court suggests that surgical intervention was not an available option, not that surgical intervention was not warranted because Plaintiff's condition and/or symptoms were not sufficiently severe.   Plaintiff testified that surgery was not indicated because it could not be done.   (AR 44 (Plaintiff asked the specialist whether surgery was available "but she said cannot [do] surgery" "on [his] situation]" and the primary care physician said "cannot do it, cannot do the surgery either")).

There is no evidence in the record to support the ALJ's finding that surgery or more aggressive treatments were available options to treat Plaintiff's conditions, and the ALJ was not qualified to draw her own inference regarding the availability of such options. Therefore, the absence of more aggressive treatments or surgical intervention was not a clear and convincing reason to discount the credibility of Plaintiff's statements regarding his symptoms and the

---

symptoms.   Orn v. Astrue, 495 F.3d 625, 635-36 (9th Cir. 2007); Durham v. Apfel, No. CV-98-1422-ST, 1999 WL 778243, *16 (D. Or. Sept. 22, 1999).   "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases." Orn, 495 F.3d at 635 (citing 67 Fed. Reg. at 57860)) (additional citation omitted).

17

severity of his pain.  Cf. Childress, 2013 WL 2643305, at *13 (explaining that "there is no evidence in the record that surgery or injections were an available or viable option for Plaintiff's condition" and therefore concluding that "in light of the ALJ's failure to identify . . . how there are alternative less-conservative treatment options, . . . this factor does not have any bearing on Plaintiff's credibility"); Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (explaining that, "[e]ven assuming Lapeirre-Gutt's regimen of powerful [narcotic] pain medications and [occipital nerve blocks and trigger point] injections can constitute 'conservative treatment,'" "the record does not reflect that more aggressive treatment options are appropriate or available," and "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist") (citations omitted).

Moreover, it is not at all obvious to this Court that consistent treatment (over two years), including referrals to a specialist,[8] of Plaintiff's conditions with, among other medications, increasingly strong narcotic pain medications[9] and

---

[8]  Plaintiff sought treatment from his primary care physician in 2011 almost monthly, (AR 234-44, 387-94), in 2012 from either his primary care physician or a specialist physician anywhere between every month to every three months (299-300, 269-72, 386), and in 2013 from his primary care or specialist physicians monthly, (AR 307-13, 324-34, 350-52, 357-62).

[9]  Plaintiff's primary care physician initially prescribed Norco in early 2011, (AR 234-44, 299-300, 311-12, 349), and at the

18

Humira, (AR 324-33, 350-52, 357-362), as well as anti-inflammatory drugs and physical therapy, is "conservative" treatment.  Cf. SSR 96-7P (explaining that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms," and that "[p]ersistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications [and] referrals to specialists, . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms").

There is no evidence that Plaintiff failed to follow a course of treatment for his conditions, that additional or more intensive or aggressive treatments or surgery were recommended or available to treat Plaintiff's conditions, or that Plaintiff's prescribed treatments of narcotic pain medications, Humira, referral to a specialist, and physical therapy were conservative.  The absence of such evidence fails to support the ALJ's finding that Plaintiff's course of prescribed treatment indicated that Plaintiff's symptoms were not as severe as he alleged.  Cf. Childress, 2014 WL 4629593, *12 (ordering remand because the ALJ was not entitled to rely upon Plaintiff's treatment with narcotics as "conservative" to support

---

beginning of 2013 prescribed Percocet instead of Norco, (AR 307-09). The treatment records further establish that Plaintiff's specialist physician recommended continued treatment with Percocet throughout 2013.  (AR 324-34, 350-52, 357-62).

the adverse credibility finding when it was "not obvious" on the record that "the consistent use of such a narcotic (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony"); Boitnott, 2016 WL 362348, *4 (explaining "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment of [the plaintiff's] conditions," and that the ALJ "was not qualified to draw his own inference regarding whether more aggressive courses of treatments were available for Plaintiff's conditions").

Moreover, at the hearing, the ALJ did not endeavor to develop the record regarding the availability of less-conservative treatment options for Plaintiff's conditions, why these more aggressive treatment options were not recommended, and why Plaintiff's prescribed treatment was routine and conservative.[10]  The Court therefore concludes that conservative treatment was not a clear and

---

[10]    An ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ's duty to develop the record is triggered only when there is "ambiguous evidence" or when "the record is inadequate to allow for proper evaluation of the evidence[.]"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ may discharge this duty in several ways, including (1) subpoenaing the claimant's physicians, (2) submitting questions to the claimant's physicians, (3) continuing the hearing, or (4) keeping the record open after the hearing to allow supplementation of the record.  Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Smolen, 80 F.3d at 1288.

convincing reason supported by substantial evidence for finding Plaintiff's subjective statements describing his pain and other symptoms not credible.

**3.    The ALJ's Reliance On A Lack Of Medical Evidence Was Not A Clear And Convincing Reason To Find Plaintiff's Statements Not Credible**

Plaintiff argues that the ALJ erroneously relied upon a lack of objective medical evidence to support her finding that Plaintiff's statements describing the severity of his symptoms were not credible. (Joint Stip. 20). Plaintiff properly notes that the lack of objective medical evidence cannot, by itself, support an adverse credibility finding. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Because the Court has concluded that conservative treatment was not a clear and convincing reason to find Plaintiff's statements not credible, the sole remaining ground on which the ALJ rejected Plaintiff's credibility is a lack of objective medical evidence. As a matter of law, the lack of objective medical evidence, standing alone, cannot be a clear and convincing reason for finding a claimant's subjective statements regarding the severity of his pain and other symptoms not credible.

///

///

///

21

1

2

**B.    The ALJ's Error Was Not Harmless**

3

        The ALJ's stated reasons--i.e., conservative treatment and a
lack of objective medical evidence--do not constitute clear and
convincing reasons for finding Plaintiff's statements describing his
pain and other symptoms not credible.   The Court must determine
whether the ALJ's error of failing to support her adverse
credibility finding with substantial evidence was harmless.   Cf.
Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (explaining
that harmless error principles apply in the Social Security context)
(citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th
Cir. 2006)).   Generally, "an ALJ's error is harmless where it is
'inconsequential to the ultimate nondisability determination.'"   Id.
(citing Carmickle v. Comm'r Soc. Sec. Admin., 466 F.3d 880, 885 (9th
Cir. 2006)) (additional citations omitted).

        The Court cannot conclude that the ALJ's adverse credibility
finding constituted harmless error.   Plaintiff's credibility was
directly relevant to assessing his limitations and, in turn, his
RFC.   A claimant's RFC "may be the most critical finding
contributing to the final . . . decision about disability."
McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (quoting
SSR 96—5p).   Here, the ALJ assessed Plaintiff with an RFC to perform
a range of light work, and this RFC was central to the ALJ's
determination that Plaintiff is capable of making a successful
adjustment to other work that exists in significant numbers in the
national economy.   (AR 25-26).   Thus, the ALJ's error was not

22

28

"inconsequential to the ultimate disability determination," Carmickle, 466 F.3d at 885, and the Court declines to deem the error harmless.

**C.  Remand For Additional Evidence Is Warranted**

Whether to remand for further proceedings or to remand for an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1173 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate for the Court to exercise its discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").

Here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors. See supra at 16-20. Thus, remand for further administrative proceedings is appropriate. On remand, the ALJ must endeavor to develop the record with regard to whether Plaintiff's prescribed treatment was routine or conservative, whether more aggressive treatment options including surgery were available to treat Plaintiff's conditions,

and, if so, why these more aggressive treatment options were not recommended.    See Tonapetyan, 242 F.3d at 1150 (explaining that an ALJ must develop the record if evidence is inadequate to determine disability).

The Court declines to rule on Plaintiff's claim that the ALJ failed to consider the relevant medical evidence in the record, including Plaintiff's treating physician's specific residual functional capacity limitations.  (Joint Stip. at 10).  Because this matter is being remanded, this issue also should be considered on remand.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is REVERSED and the matter is REMANDED for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 8, 2016

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE